IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH W. CRAWFORD, M.D., <br> Plaintiff, | ) <br> ) <br> ) |
| v. | ) CIVIL ACTION NO. 3:04-166 <br> ) |
| DANIEL S. DUGGAN, CEO, BON <br> SECOURS HOLY FAMILY HOSPITAL, <br> and BOARD OF TRUSTEES, BON <br> SECOURS HOLY FAMILY HOSPITAL, <br> Defendants. | ) <br> ) JUDGE KIM R. GIBSON <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION & ORDER

**GIBSON, J.**

Now before the Court is Defendants' Motion for Sanctions (Document No. 38) arguing that dismissal of the above-captioned matter is appropriate following Plaintiff's dilatoriness and refusal to conduct discovery. For the reasons discusses herein, the Court shall order the dismissal of Plaintiff's Complaint.

## I. FACTUAL HISTORY

Plaintiff Kenneth Crawford's Complaint, filed on July 12, 2004, stated diversity claims for alleged defamation, false light invasion of privacy, interference with prospective economic advantage, and intentional infliction of emotional distress. Document No. 1, ¶¶ 33-65. Crawford, a medical doctor, alleged that in retaliation for his having made certain criticisms of the procedures at Bon Secours Holy Family Hospital, the Defendants maliciously defamed him through a report entered in the National Practitioner Data Bank that recommended denying Plaintiff clinical privileges. *Id.* at ¶¶ 7-32. Crawford had criticized the under-staffing at Bon Secours' Intensive Care Unit, which he believed contributed to the death of five patients over two days in March 2003. Plaintiff was initially represented by James

1

E. Beasley, James E. Beasley, Jr., and Catherine A. Rothenberger of the Beasley Firm.

Defendants, represented by Brian M. Peters and Kathleen M. Chancler, filed their Answer on September 10, 2004. Document No. 5. A case management conference held on April 14, 2005, resulted in a Court Order setting a discovery deadline of September 7 of that year. Document No. 13. Defendants served their first set of interrogatories and requests for production of documents on March 10, 2005, and notified Plaintiff that responses were due in thirty days. Document No. 39, p. 2. After ignoring Defendants' communiques, Plaintiff finally served severely deficient responses on May 27, 2005. *Id.* Defendants continued to try in good faith—and in vain—to elicit adequate responses. Frustrated by Plaintiff's delays and equally discouraged by Plaintiff's failure to timely provide the initial disclosures required by FED. R. CIV. P. 26(a), which the Parties had agreed were due by April 11, 2005, Defendants filed a Motion to Compel on July 13, 2005, seeking both the requested discovery and the initial disclosures. Document No. 14. A second set of interrogatories and requests for production of documents, served on June 16, 2005, led to a second motion to compel, filed on August 5, 2005. Document No. 16.

A hearing on the first motion was held on September 2, 2005. Eleven days later and before the Court issued its decision, the Beasley Firm filed a motion to withdraw from its representation of Crawford. Document No. 20. On November 29, 2005, the Court granted the withdrawal over Crawford's objection, having found that "Beasley has provided good cause." Document No. 28, p. 4. Specifically, the Court credited arguments that Crawford had failed to provide his lawyers with the documents needed to engage in meaningful discovery and that "the facts upon which Beasley initially agreed to represent the Plaintiff. . . have been called into doubt by . . . preliminary investigations." *Id.* In conjunction with the withdrawal, the Court granted a stay in the case of sixty days so that Crawford

2

could find new counsel or prepare his *pro se* case. The Court also instructed Plaintiff to use that time to adequately respond to Defendants' still-outstanding discovery requests. *Id.* at 6. On January 11, 2006, upon motion from Plaintiff, the Court granted an additional sixty-day stay, again so that Crawford could respond to the discovery requests and obtain counsel or prepare to proceed *pro se*. Document No. 31.

On March 13, 2006, Crawford moved for the *pro hac vice* appearance of attorneys Phil Crawford and Bob L. Thomas on his behalf; the Court granted those motions on April 5, 2006. Document Nos. 32, 33, & 37. In the interim, the Court granted Defendants' Motions to Compel, noting that "in light of Plaintiff's recent efforts to secure counsel he will have sixty (60) days from [March 24, 2006,] to provide the" Rule 26(a) disclosures and requested discovery. Document No. 36, p. 2.

Defendants' apparently received no response to an April 12, 2006, letter detailing the information they sought and noticed Crawford of their intent to move for sanctions under FED. R. CIV. P. 37(b)(2)(c), which they did on June 2, 2006. As of that date, Plaintiff had still not complied with the Court's March 24 Order. Document No. 39, p. 6. Nor has Plaintiff filed any opposition to the Motion *sub judice*.

## II. ANALYSIS

According to FED. R. CIV. P. 37(b)(2),

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . .
> (C) An order . . . dismissing the action or proceeding or any part thereof. . . .

In addition, FED. R. CIV. P. 41(b) states that "[f]or failure of the plaintiff to prosecute or to comply with

these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." A court may also determine *sua sponte* that a case warrants dismissal for nonprosecution. *Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994).

Because they relate to a court's inherent power to manage litigation in an orderly and efficient manner, such orders of dismissal are left to the discretion of the trial court. *Marshall v. Sielaff*, 492 F.2d 917, 918 (3d Cir. 1974) (citations omitted). In seeking to guide that discretion, however, the Third Circuit has held that courts contemplating dismissal under either Rule should examine the same six factors. *Spain*, 26 F.3d at 454-55 (applying Rule 41(b)); *United States v. $1,322,242.58*, 938 F.2d 433, 439 (3d Cir. 1991) (applying Rule 37(b)(2)(C)). *But see Spain*, 26 F.3d at 454-55 (suggesting that those factors are only relevant when a plaintiff opposes a Rule 41(b) motion). Thus, in reaching its decision, the Court must consider

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternate sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

## A. Crawford's Personal Responsibility

Crawford is personally responsible for the bulk of the delays that have vexed this case. As the Court found in its Order granting the Motion to Withdraw, the Beasley Firm was hamstrung in its efforts to engage in meaningful discovery by Plaintiff's failure to provide the necessary documents. From the time that the first interrogatories were served until the time of the Beasley Firm's withdrawal, Plaintiff had over eight months to provide the appropriate disclosures. After the withdrawal, the Court

4

granted Plaintiff an additional 120 days to comply with the discovery requests. That period expired without any disclosures being served. Almost ten months have passed since new counsel were allowed to appear *pro hac vice* in a case with a recently-issued Order to Compel. Still, no compliance has occurred. Nearly two years have passed since Defendants served their initial interrogatories and document requests. Plaintiff has spent most of this time either frustrating his lawyer's efforts to participate in discovery or personally ignoring Defendants' requests and the Orders of this Court. The Court also finds that Defendants' discovery requests were not of such a legal nature that Plaintiff's temporary *pro se* status excuses any of his delays. The first *Poulis* factor thus militates for dismissal

### B. Prejudice to Defendants Caused By Plaintiff's Failures

Defendants have spent time and money preparing their two Motions to Compel and the Motion for Sanctions now under consideration. They have vainly waited almost two years for the information they legitimately requested in their good-faith discovery efforts. Court deadlines have come and gone without Defendants being able to effectively prepare even the semblance of a trial strategy. Plaintiff's inability to comport his behavior with the spirit of the federal rules governing discovery has mocked Defendants' interest in litigating this case. The Court notes that the *Poulis* court was concerned with similar conduct and accordingly finds that Plaintiff's behavior has prejudiced defendants. *Poulis*, 747 F.2d at 868.

### C. The History of Dilatoriness

The repeated failures that comprise the delays in this case have already been recounted. Plaintiff and his counsel, both new and old, have appeared reluctant to communicate with Defendants and have consistently ignored deadlines imposed both by the Parties and by the Court. From almost the start, Plaintiff's dilatoriness has been the rule in this case rather than the exception and has constantly kept

the lawsuit from moving forward.

### D. Whether Crawford Acted Willfully or in Bad Faith

Crawford has argued that some of his delays were due simply to negligence resulting from his participation in unrelated litigation. Document No. 28, p. 3. But the consistency of his noncompliance suggests a more intentional disregard of Court orders and discovery deadlines. Regardless, Plaintiff "exhibit[s] bad faith by essentially ignoring all discovery requests and the court's order compelling discovery...." *$1,322,242.58*, 938 F.2d at 440. While the extent of his delays alone is great enough to constitute bad faith, Crawford's consistent behavior indicates that he has willfully undermined Defendants' discovery efforts and flouted the authority of this Court.

### E. The Effectiveness of Other Sanctions

While the Court has not attempted other sanctions, it does note that alternatives are available. For instance, Plaintiff could be made responsible for the expenses Defendants have accrued trying to defend this litigation. Given Plaintiff's apparent disinterest in prosecuting his case, however, the Court finds that dismissing his Complaint may be more appropriate—and lenient—than imposing costs and fees.

### F. The Merits of Crawford's Case

Though the Court is not prepared to fully assess the merits of Plaintiff's claims, it finds some reason to anticipate that were discovery to proceed, it would reveal significant fissures in the bedrock of this case. For one, the Beasley Firm was allowed to withdraw their representation because the Court found that "based upon . . . analysis of the entire factual situation, [the firm] determined that the 'records don't show what [Plaintiff] told us.'" Document No. 28, p. 2. Furthermore, as pointed out in Defendants' Motion, "at the October 11, 2005 hearing on the . . . Motion to Withdraw, Plaintiff himself

admitted that 'as it appears now, those five deaths had nothing to do with what [Defendants] did to me, maybe, maybe, I don't know.'" Document No. 39, p. 10 (quoting Document No. 27, p. 4). Also at that hearing, Plaintiff described the grounds on which he initially felt there was a basis for litigation:

> When I went to get a lawyer—I had no clear cut knowledge of why this hospital did this terrible thing to my life, I could only offer possibilities, and one of those possibilities was that they had five deaths in their hospital on a Saturday when I was in there doing an open heart case, in their ICU, in one little area, and this was, to my mind, very outside the norm. I didn't know why these people died, I didn't know anything about them, all I knew was that five people died. And while there—I made requests for an inquiry to happen.

Document No. 27, p. 4. Indeed, one possible explanation for the negative report in the National Practitioner Data Bank is retaliation for inquiring into what may be an unusual occurrence. There are also thousands of other possibilities, and there is no reason for the Court to find that any one is more likely than another. There is no evidence that five deaths in one day is particularly unusual, or that these five deaths were the result of Defendants' negligence. There is no evidence of anything, in large part because Plaintiff has stymied discovery. Based on what is before it, however, the Court finds it unlikely that dismissal will work an injustice on any persuasive claim.

## III. CONCLUSION

Every deadline has long since passed and there is no indication that either Crawford or his attorneys are interested in pursuing this matter. Quite the opposite, the difficulty that Defendants have encountered trying to proceed with their defense suggests that Crawford has abandoned his own lawsuit. Because there has been no opposition to Defendants' request for dismissal, because the Court finds that nonprosecution merits dismissal, and because Plaintiff has demonstrated no interest in complying with either the Federal Rules of Civil Procedure or the Orders of this Court, the Complaint in this matter shall be dismissed. Under FED. R. CIV. P. 41(b), the accompanying Order will constitute a final

7

judgment on the merits.

An appropriate Order follows

**AND NOW**, this 26th day of January, 2007, upon consideration of Defendants' Motion for Sanctions (Document No. 38) and the Court's own determination that Plaintiff has failed to prosecute his case, **IT IS HEREBY ORDERED** that the above-captioned matter is **DISMISSED** with prejudice. Accordingly, the Clerk of Court shall enter judgment in favor of Defendants.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

Cc: All counsel of record